Joseph Mistowsky  
    vs.        No. 66490  
Max Rosen

RESCRIPT

January 21, 1927

CAPOTOSTO, J. In an action for the negligent operation of an automobile by an agent of the defendant, the jury returned a verdict for the plaintiff in the sum of $3500. The defendant moves for a new trial and relies principally upon his claim that the damages awarded are excessive.

The plaintiff was injured as he was crossing from the westerly to the easterly side of North Main street, in the vicinity of Steeple street, after dark in the early evening of October 10, 1925. That afternoon it had been storming. At the time of the accident it was cold and windy. The plaintiff himself said that when he came to the point of crossing, he looked to see if the road was clear and saw no moving vehicle in sight; that he then started to cross the street in a leisurely manner, and that when he had reached a position between the rails of the inbound track, he was struck and thrown flat on his back to the ground; that at that moment he saw an automobile and "a lot of stars," and that thereafter everything became a blur until he came to in the Rhode Island Hospital.

The evidence showed that some 40 feet or more north of the point where the plaintiff started to cross there was an automobile parked along the westerly curb of North Main street. The defendant's automobile, which had been standing in front of his place of business on North Main street, about opposite Meeting street, started from a point, some short distance in the rear of the parked automobile and proceeded south toward Steeple street. The defendant's driver testified that the plaintiff passed from in front of the parked automobile and first came into his view when he, the driver, was within two feet of the plaintiff, at which time he blew his horn, put on his brakes and turned to his left in an attempt to avoid an accident. He further testified that before he got to the parked car, he had looked at his oil gauge and had noticed that at that time his speedometer registered a speed of between 12 and 15 miles an hour.

There is no question but that at the time the plaintiff started to cross North Main street there were no moving vehicles within a reasonable distance of the point of crossing. Whether or not, under these circumstances, the plaintiff was in the exercise of due care and the defendant's agent negligent is a pure question of fact. The finding of the jury in favor of the plaintiff on the issue of liability is justified by the evidence, even though one concedes that another jury might reach a different conclusion. The injuries which the plaintiff received were undoubtedly painful and resulted in at least slight permanent disabilities.

The principal injuries which Dr. Murray S. Danforth found the plaintiff suffering with the day after the accident were a fracture of the humerus and an injury to the spiral nerve resulting in a partial paralysis of the hand. It is unnecessary to recount in detail the treatment applied. Splints, plaster casts, weights, baking and electrical treatments were all resorted to while the plaintiff was a patient either in the Rhode Island Hospital itself or at the Out-Patient Department. The skill and judgment of so eminent a surgeon gratuitously placed at the disposal of the plaintiff undoubtedly resulted in a material advantage to the defendant, yet in spite of everything that was done to assist him, plaintiff at the time of the trial had a misalignment of the bone in his upper arm, a noticeable although not a great permanent limitation of motion in the elbow and in the wrist, and some slight impairment of the hand due to the original injury to the spiral nerve.

The extent of plaintiff's loss of income by reason of total or partial incapacity due to the accident is a question as to which reasonable men may fairly disagree. The plaintiff claimed that at the time of his injury he was engaged either in the sale of novelties, such as Christmas tree pennants, flag holders and flags for automobile radiator caps, reproductions of antiques and fancy cream pitchers in the form of cows, or taking orders for shoes, and that for about eight months a year he earned on an average of $35 a week. The defendant apparently questioned the fact that the plaintiff had any legitimate source of income and drew from the plaintiff admissions that years ago he had been "a bookmaker;" that up to two years before the accident he had been a "betting commissioner," and that in 1924 he went into the novelty business. No evidence was introduced by the defendant that the plaintiff was not following a legal occupation at the time of the accident.

Change of employment often happens through choice or necessity. It is a matter of almost public knowledge that for a few years past the cause for certain lucrative but illegal activities has been almost, if not entirely, removed. In the absence of

any contradictory evidence, we can not say, therefore, that the plaintiff did not follow the course indicated by; necessity and reason, and that the former "betting commissioner," well advanced in years as he was, did not abandon the taking of bets to become itinerant salesman of shoes and novelties. What the plaintiff actually earned at this roving occupation is conjectural notwithstanding his testimony as to the $35 weekly average over a period of eight months. But whatever his actual income may have been, the evidence at least established the fact that he made a living in this manner. Upon all the evidence in this case, the jury was justified in giving the plaintiff a substantial award. This Court can not say that the amount of the verdict in this case exceeds the bounds of reasonable discretion.

Defendant's motion for a new trial denied.

For plaintiff: Curran, Hart, Gainer & Carr.

For Defendant: Curtis, Matteson, Boss & Letts.